UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA BRENNAN,

    Plaintiff,

vs.

Case No. 16-10119
HON. GEORGE CARAM STEEH

DEPUTY JAMES DAWSON,
SHERIFF JOHN WILSON, and
CLARE COUNTY,

    Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT (DOC. 14)</u>

Plaintiff Joshua Brennan brings claims pursuant to 42 U.S.C. § 1983, alleging that defendants Deputy James Dawson, individually and in his official capacity, Sheriff John Wilson, in his official capacity, and Clare County violated his Fourth Amendment rights. This matter is presently before the Court on defendants' motion for summary judgment. (Doc. 14). Pursuant to Local Rule 7.1(f)(2), the Court shall rule without oral argument. For the reasons stated below, defendants' motion is GRANTED.

**I. Background**

Plaintiff was placed on probation on August 11, 2014, following an assault and battery conviction in Gladwin County. (Doc. 14-4 at PageID

1

113).  On February 21, 2015, Clare County Sheriff's Department Deputy James Dawson traveled to 2184 Oakridge Drive in Farwell, Michigan, to conduct a probation check on plaintiff.  (Doc. 14-3 at PageID 109).  This check was to include a Preliminary Breath Test (PBT).  (*Id.*).  The eighth term of plaintiff's probation states that he must "[n]ot possess or consume alcoholic beverages nor enter any establishment which allows for the consumption of alcoholic beverages on its premises, nor be in the company of anyone consuming alcohol.  You are subject to random PBT upon demand at your expense."  (Doc. 14-4 at PageID 113).

Deputy Dawson was aware that Clare County Sargent Miller and Deputy Piwowar had attempted to check on plaintiff the night before, February 20, 2015.  (Doc. 14-3 at PageID 109).  An individual named Joshua Dishneau emerged from plaintiff's home as the officers arrived.  (*Id.*).  He indicated that plaintiff was awake inside the home.  (*Id.*).  Miller and Piwowar attempted to contact plaintiff by knocking and announcing for over a half hour, but no one answered.  (*Id.*).

Dawson arrived at plaintiff's mobile home at 8:18pm.  (Doc. 14-3 at PageID 111).  He approached and knocked on the front doors.  (Doc. 14-3 at PageID 109).  No one answered.  (*Id.*).  Dawson heard people moving

and speaking inside the home and believed that someone was inside. (*Id.*). He walked around the home knocking on various windows. (*Id.*). No one answered, but Dawson continued to hear some movement and speech. (*Id.*). Dawson then returned to his vehicle and activated his emergency lights and siren. (Doc. 1 at PageID 4). Dawson also noticed surveillance cameras on plaintiff's porch. (*Id.*). Dawson adjusted the cameras to alter their viewpoint and thereafter obscured the lenses with caution tape. (*Id.*).

Ashley Wright arrived at plaintiff's home around 9:12pm. (Doc. 14-3 at PageID 111). Dawson and Wright's interaction lasted approximately 20 minutes. Wright initially told Dawson that she received a call stating the home's occupant was on vacation and asking her to visit to determine why officers were present. (Doc. 14-3 at PageID 109). Dawson questioned Wright's story. In response, Dawson alleges that she changed her story to reflect that her brother had received a call from the home occupants. Dawson followed up on this story. Wright changed her statement again, stating that her father received a call. (Doc. 14-3 at PageID 109). Dawson spoke with Wright's father and determined that was not true. Wright became flustered and Dawson responded that she could leave and that he would simply wait for plaintiff or another occupant to answer. (Doc. 14-6).

Plaintiff exited his home around 9:50pm. (Doc. 14-3 at PageID 109). He stated that he was ill and had been asleep. He submitted to a PBT. (Doc. 14-3 at PageID 110). Test results indicated that plaintiff had 0.000 grams of alcohol per 210 liters of breath. (*Id.*). Dawson arrested plaintiff for violating his probation term ordering submission to PBT on demand. (*Id.*). These circumstances, where others told multiple lies to deceive officers about plaintiff's presence in the home, and the efforts plaintiff went to in order to remain inaccessible, could reasonably lead officers to believe that plaintiff was violating his conditions of probation by obstructing the administration of the PBT. Plaintiff was transported to the Clare County jail. (*Id.*). He remained there until his arraignment on February 24, 2015, where Magistrate Karen Willing of the 80th District Court dismissed the alleged probation violation. (Doc. 1 at PageID 5).

## II. Legal Standard

Rule 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en

banc) (citing Fed. R. Civ. P. 56(c)). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. There must instead be evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

### III. Analysis

Plaintiff brings five claims against Dawson. Count I alleges that Dawson illegally entered the curtilage of plaintiff's home. Count II alleges that the PBT was an illegal search. Count III and V allege that plaintiff's arrest was an illegal seizure. Count IV alleges that Wilson and Clare

5

County failed to adequately train Dawson and are liable for the resulting harm to plaintiff.

Dawson asserts that he is entitled to summary judgment on the basis of a qualified immunity defense. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982)). A right is clearly established if "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id*. at 741 (internal citations omitted). The Court has discretion to decide which element to address first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

**A. Fourth Amendment Claims against Defendant Dawson**

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. Amend. IV.

**1. Count I: Search of Plaintiff's Curtilage**

Dawson approached plaintiff's mobile home and knocked on the front doors. Despite hearing movement and speech inside the home, Dawson failed to receive an answer from any occupant. He then walked around knocking, and announcing his presence, on multiple windows. Plaintiff asserts that Dawson illegally entered the curtilage of his home and peered through his windows.

Curtilage is an area "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301 (1987). "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469 (2011). The Supreme Court has "recognized that 'the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.'" *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013) (quoting *Breard v. Alexandria*, 341 U.S. 622, 626 (1951)). "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* "Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without

incident by the Nation's Girl Scouts and trick-or-treaters." *Id.* Police officers not armed with a warrant may, therefore, approach a home and knock, because any private citizen might do the same. *Id.* at 1416 (citing *King*, 563 U.S. at 469). *See also Turk v. Comerford*, 488 F. App'x 933, 947 (6th Cir. 2012) ("A law enforcement officer may enter a home's curtilage without a warrant if he has a legitimate law-enforcement objective, and the intrusion is limited."). Occupants, however, have "no obligation to open the door or to speak" to such visitors. *King*, 469-70.

Dawson's initial approach and knocks on plaintiff's front doors are permissible under the knock and talk exception articulated above. As such, he was permitted to look through adjacent windows. *Nyilas v. Steinaway*, No. 14-cv-13122, 2016 WL 8969353 (E.D. Mich. May, 29, 2016) (citing Wayne R. LaFave, 1 Search & Seizure § 2.3(c) (5th ed. 2012) ("At least when the officer only employs his natural senses, the prevailing rule is that such uses of the senses made from a place where a police officer has a right to be do not amount to a search in the constitutional sense.")).

Dawson was also legally permitted to walk around plaintiff's home to try and contact someone inside by knocking on and looking in additional doors and windows. In *Hardesty v. Hamburg Tp.*, 461 F.3d 646 (6th Cir.

2006), "officers observed lights in the house go off as they approached the front door." *Id.* at 649. As a result, officers believed that someone was inside the house even though no one answered the officers' knock at the front door. *Id.* Officers proceeded to the rear of the house, onto the deck, and looked through a sliding glass door. *Id.* The Sixth Circuit ruled that the officers' actions were appropriate, stating that "where knocking at the front door is unsuccessful in spite of indications that someone is in or around the house, an officer may take reasonable steps to speak with the person being sought out even where such steps require an intrusion into the curtilage." *Id*. at 654. Dawson likewise walked around plaintiff's home, through the curtilage, knocking on windows and doors. His actions were similarly "directed towards initiating a conversation with the person or people in the house." *Id.*

Dawson's later activity, however, is more difficult to analyze. Following the aforementioned knocks to doors and windows, Dawson returned to his car and activated his emergency lights and sirens. This failed to elicit a response from plaintiff. Dawson thereafter made several trips around the home and curtilage, knocking on various doors and windows. Dawson waited outside plaintiff's home for roughly an hour and a half. These actions do not align with the implicit license described by the

Supreme Court. But, "few, if any, cases detail how long the police may knock on the door. . . ." *Nyilas*, 2016 WL 8969353, at *5. Another court in this district, however, "conclude[d] as a matter of law that the social invitation does not last indefinitely. In most circumstances, if a person does not receive a response after several minutes of knocking, the person should assume, absent evidence to the contrary, that the occupants do not want to interact with them." *Id*. Viewed in the light most favorable to plaintiff, there is no evidence that the occupants' of plaintiff's home wanted to interact with Dawson. At issue, however, is whether plaintiff was required to interact with Dawson based on his probation terms. Plaintiff's probation terms prohibit his possession or consumption of alcoholic beverages and state that he "is subject to random PBT upon demand at [his] expense." Doc. 14-4 at PageID 113). Thus, unlike *King*, it is unclear whether plaintiff had no obligation to open the door or speak with Dawson.

It is also unclear whether Dawson's repeated knocking is a constitutional violation. The Court, however, finds that Dawson's conduct does not violate clearly established law. At the time of the challenged conduct, the contours of plaintiff's Fourth Amendment rights were not sufficiently clear such that every reasonable official would have understood that entering and exiting a probationer's curtilage, over a 90 minute period,

to knock on doors and windows in order to administer a PBT pursuant to their probation terms violated the Fourth Amendment.

### 2. Count II: PBT Search

A PBT is a search. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989). "[A] search conducted without a warrant issued upon probable cause is per se unreasonable. . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal citations omitted). One exception "to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* Not all consent will suffice. *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). Valid consent is that which is "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *Id.* (internal citations omitted). Whether consent was voluntary "is a question of fact to be determined from the totality of the circumstances." *Schneckloth*, 412 U.S. at 223.

Plaintiff submitted to a PBT, but argues that his consent was invalid because he merely acquiesced to Dawson's demand. As such, plaintiff argues that the search was conducted without a warrant or applicable exception and violates the Fourth Amendment. Plaintiff's argument fails.

Dawson did not violate plaintiff's rights when he demanded a PBT. Plaintiff was on probation. "[P]robation is 'rejectable'; that is optional and voluntary. Imprisonment is not." *People v. Peterson*, 62 Mich. App. 258, 271 (1975) (Danhof, J., dissenting). A probationer is given a choice, and has consented to probation terms in return for more lenient treatment. *Id.* As such, "a waiver of one's constitutional protections against unreasonable searches and seizures may properly be made a condition of a probation order where the waiver is reasonably tailored to a defendant's rehabilitation." *People v. Hellenthal*, 186 Mich. App. 484, 486 (1990). Plaintiff was on probation for assault. The probation term prohibiting plaintiff from possessing or consuming alcohol, and subjecting him to random PBT upon demand, is reasonably related to his prior criminal conduct and is aimed at deterring similar offenses. The Court, therefore, finds that it is reasonably tailored to plaintiff's rehabilitation. Accordingly, there is "no constitutional barrier to the inclusion of a waiver, such as the one objected to in this case, as one of the conditions in an order of probation." *People v. Richards*, 76 Mich. App. 695, 699 (1977). As such, Dawson's demand that plaintiff submit to a PBT, pursuant to his probation term, does not make plaintiff's consent, via submission, contaminated or coerced. Plaintiff, therefore, has not shown a genuine issue of material fact

concerning his allegation that the PBT violated his Fourth Amendment rights.

### 3. Counts III and V: Plaintiff's Arrest

"Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Plaintiff argues that Dawson's mere belief that plaintiff was aware of the officer's presence, and intentionally avoiding the PBT, does not constitute probable cause. Plaintiff focuses on the objective analysis, arguing that Dawson's subjective belief is insufficient. Moreover, plaintiff asserts that there could not be probable cause because his PBT results indicated that he did not have alcohol in his system, Dawson had no proof plaintiff was ill and slept through the earlier knocks, and a magistrate later dismissed the alleged probation violation.

Dawson argues that he had probable cause because, in these circumstances, an officer of reasonable caution would believe plaintiff had violated his probation terms. Dawson asserts that he heard people moving

and speaking inside plaintiff's home. Dawson's interaction with Wright purportedly led him to believe that plaintiff wanted to evade Dawson or dissuade him from conducting the PBT. Finally, Dawson was aware of the time sensitive nature of a PBT; stating that plaintiff may have had alcohol in his system when Dawson arrived and wanted to delay the PBT until it had passed out of his system. Dawson felt that waiting an hour and a half went beyond what was reasonably meant by the "on demand" probation term. Dawson, therefore, believed that he had probable cause to arrest plaintiff for violating his probation term.

Whether or not Dawson had probable cause, given the facts of the case, it is not obvious that a reasonable official would have understood that probable cause to arrest was lacking. The Court, therefore, finds that qualified immunity applies to Counts III and V.

## B. Claims Against the Supervising Defendants

Plaintiff argues that Dawson's constitutional violations and indifference to Fourth Amendment training policies create municipal liability against "supervisory defendants" Clare County and Sheriff Wilson. A municipality may be liable under 42 U.S.C. § 1983 for constitutional violations resulting from failure to train employees where that failure

"reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of Cnty. Comm'n of Bryan Cnty., Okla. V. Brown*, 520 U.S. 397, 410 (1997). Such deliberate indifference may be found "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" and the policy makers nonetheless choose to retain that program. *Connick v. Thompson*, 563 U.S. 51, 66 (2011).

The Court ruled that Dawson did not violate the Fourth Amendment as alleged in Count II, so municipal liability cannot be found for those acts. In contrast, the Court reserved ruling on the constitutionality of Dawson's actions in Counts I, III, and V and applied qualified immunity because, under these facts, plaintiff's right to be free from arrest was not clearly established. The Court, therefore, cannot find that Clare County was on actual or constructive notice that their training program caused employees to violate the Fourth Amendment. As such, there is no municipal liability for Counts I, III, and V.

## IV. Conclusion

For the reasons stated above, defendants' motion is GRANTED.

IT IS SO ORDERED.

Dated: September 7, 2017

<div style="margin-left: 40%;">
<u>S/George Caram Steeh</u>  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE
</div>

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 7, 2017, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>  
Deputy Clerk